1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,                    No. CR-03-00917-001-PHX-DJH
                                                   No. CR-97-00199-001-PHX-DJH
10                    Plaintiff,
                                                   **ORDER**
11   v.

12   Philip James Chillemi,

13                    Defendant.

14

15         Pending before the Court is the Defendant's Amended Motion for Compassionate

16   Release.  (Doc. 120).  The Government has filed a Response in opposition (Doc. 122) to

17   which the Defendant has Replied.  (Doc. 123).  For the following reasons, the Court denies

18   the Defendant's request.

19   **I.     Background**

20         The Defendant was convicted post jury trial of Bank Robbery in violation of 18

21   U.S.C. § 2113(a), on December 11, 2003.  On August 16, 2004, he was sentenced to two-

22   hundred-forty months in federal custody followed by three years on supervised release.

23   (Doc. 59).  At the time he committed the bank robbery, the Defendant was on supervised

24   release.  Consequently, he was committed to federal custody for twenty-four months to be

25   served consecutively to the bank robbery sentence.  (Doc. 133; 97-CR-00199).   The

26   Defendant is presently held in the federal correctional institute in Phoenix, Arizona

27   ("FCI"), a medium security facility.  Although the FCI shows his projected release date as

28   May 12, 2030, the Government disputes that and agrees that he has just about finished his

1   bank robbery sentence and will soon begin his two-year supervised release violation term.

2   (Doc. 122 at 3).

3          **II.**     **Legal Standards**

4          The basis for the Defendant's Motion is the arrival of the COVID-19 virus.[1]

5   Defendant brings his Motion pursuant to 18 U.S.C. § 3582(c)(1)(A), which was recently

6   modified by the First Step Act of 2018. *See* Pub. L. No. 115-391, § 603.  That statute

7   provides:

> The court may not modify a term of imprisonment once it has been imposed
> except that –
>
>> (1) In any case –
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons,
>>> or upon motion of the defendant after the defendant has fully
>>> exhausted all administrative rights to appeal a failure of the Bureau of
>>> Prison to bring a motion on the defendant's behalf or the lapse of 30
>>> days from the receipt of such a request by the warden of the
>>> defendant's facility, whichever is earlier, may reduce the term of
>>> imprisonment . . . after considering the factors set forth in section
>>> 3553(a) to the extent that they are applicable, if it finds that –
>>>> (i) extraordinary and compelling reasons warrant such a
>>>> reduction[.]

18 U.S.C. § 3582(c).

          **a.  Exhaustion of Remedies**

          This Court "may not modify a term of imprisonment" unless the Congressionally mandated exception is present.  18 U.S.C. § 3582(c).  That exception is present when either the motion to modify sentence is brought by the Bureau of Prisons ("BOP") "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The statutory language is unambiguous and not waivable. *See United States v. Weidenhamer*, 2020 WL 1929200 *2 (D. Ariz. Apr. 21, 2020) ("If the statutory language contains mandatory language . . . a court may not excuse a failure to exhaust") (citing *Ross v. Blake,* 136 S. Ct. 1850, 1858 n.2

---

[1] The Court adopts the Defendant's description of COVID-19 noted at pages 4-5 of his Motion. (Doc. 120).

(2016)).  Thus, the Court may not consider a defendant's motion without proof that he meets this exhaustion requirement.

### b.  Extraordinary and Compelling Reasons

The First Step Act references the sentencing commission's policy statement for what should be considered as an extraordinary and compelling reason.  Sentencing guideline section 1B1.13 n. 1 defines "extraordinary and compelling reasons" for compassionate release.  It includes considerations of 1) whether the defendant has a serious advanced illness or medical condition; 2) whether the defendant is at least 65 and experiencing physical or mental health problems due to his/her advanced age, and the length of time incarcerated; 3) specific family circumstances; and 4) other reasons as determined appropriate by the Director of the BOP.  *See* U.S.S.G. § 1B1.13 cmt. 1(A)-(B). The sentencing commission has not altered its guidance since the First Step Act was amended, thus, courts may independently determine whether such other reasons are present on a case-by-case basis and without deference to the BOP.  *See United States v. Carter* 2020 WL 3458598, at *4 n.3, n.4 (D. Ariz. June 25, 2020) (citations omitted).

In considering motions for compassionate release, the Court must also "consider [ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c).  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims."  *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013). Therefore, the Court must find both extraordinary and compelling reasons for compassionate release and that the 3553(a) factors support such release.  *See United States v. Ruelas*, 2020 WL 5645093, *2 (D. Ariz. Sept. 22, 2020) (citations omitted).

### III.  Analysis

#### a.  Exhaustion of Remedies

- 3 -

The parties agree, as does the Court, that the Defendant has met the exhaustion requirement. *See* (Doc. 120 at 3; exh. A) (Doc. 122 at 6). The Court notes that in evaluating the Defendant's request, the Warden used the established criteria for Home Confinement under the First Step Act and the Attorney General Memorandum, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic. (Doc. 1201-1). The Defendant's medical condition was also considered in applying the evaluation criteria. (*Id.* at 1). The Warden concluded the Defendant "to be ineligible for direct home detention" because he did not meet the aforementioned criteria. (*Id.*) Nonetheless, the Defendant seeks a judicial determination of whether he may be considered for compassionate release.

**b. Extraordinary and Compelling Reasons**

Defendant's Motion does not put forth any argument that he meets the second or third criteria for extraordinary and compelling reasons. Thus, the Court will not consider them. The Defendant urges two reasons for compassionate release: 1) he is "particularly vulnerable to the COVID-19 because he suffers from Hepatitis-C, obesity and malignant hypertension" and 2) should he become infected "he faces a very high likelihood of death or permanent bodily injury." (Doc. 120 at 1-2). The Defendant acknowledges two factors projected to result in severe illness or death should one contract the virus: age and the presence of comorbidities. (*Id.* at 6). Further, he argues that despite the multiple efforts made to curb the spread of COVID-19 within BOP facilities, generally these efforts have not eliminated the virus. (*Id.* at 7). He further notes that the FCI Phoenix facility has instituted lock-downs that include limiting detainee time outside of their cells. (*Id.* at 9). He contends that despite these efforts, inmates are particularly susceptible to the virus, given the prison environment. The Government retorts that his "medical records do not establish any medical conditions that have been identified by the CDC as putting him at higher risk for severe illness," and even if he were otherwise eligible for relief, such relief "must also be denied because he remains a danger to the community." (Doc. 122 at 7, 11). The Court agrees.

1

2

3

4

5

6

7

8

9

10

11

12

13

     The medical records indicate that the Defendant is 52, has malignant and essential hypertension; chronic viral hepatitis C, and keratoconus.[2]  His most recent examinations, and indeed a majority of his health exams, involve examinations for keratoconus and dental hygiene care. In February and June 2019, he was examined related to his hypertension for which he was prescribed medication, and at that time, he denied any other medical problems.  (Doc. 113-1 at 22, 25).  In May 2019, he denied having a history of diabetes, cardio-respiratory issues, and he refused care for his hepatitis.  Regarding his weight, the Defendant states that "[he] is obese, but it [is] not clear to what degree." (Doc 120 at 10).  He later urges that the medical records are not clear as to his weight.  However, the medical record of February 2019 notes he was 194 pounds, and in June 2019, he was 196 and the Government notes that at time of sentencing he was six feet tall. (Doc. 122 at 9).   Thus, based on this record, whether he meets the criteria for obesity remains questionable.

14

15

16

17

18

19

20

21

22

23

24

     Considering the Defendant's current age and health, the Court finds that he is not suffering from a serious physical or medical condition that warrants the extraordinary relief he seeks.  A review of his medical record belies his argument.  First, according to the Centers for Disease Control and Prevention ("CDC"), adults with hypertension "might be" at an increased risk of severe illness from the virus.[3]   Moreover, while the CDC indicates that people with liver disease "might be at higher risk for severe illness from COVID-19" specifically regarding those with Hepatitis C, they state "[c]urrently, we have no information about whether people with  . . . hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19."  Essentially, the combination of age and specific comorbidities may result in serious health effects should one be infected. The Court has reviewed the Defendant's available medical record and can find nothing to support his

25

26

[2] Keratoconus is a correctable cornea eye condition. *Keratoconus*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352 (last visited Nov. 12, 2020).

27

28

[3] *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, CENTERS FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 12, 2020).

contention that should he become infected "he faces a very high likelihood of death or permanent bodily injury." The Defendant's age is outside of the vulnerability factors. Given his refusal for treatment of his hepatitis-C diagnosis, the Court can only conclude that the diagnosis itself does not arise to a serious health condition.

The Government also asserts that overall, the BOPs aggressive efforts to protect its detainees has resulted in "a very low percentage of the inmate population [ ] currently confirmed positive" for COVID-19.  (Doc. 122 at 4).  The Government notes that the numbers at FCI Phoenix "are slightly better than the national average" with eight persons currently confirmed positive.  (*Id*. at 4–5).  As of this Order, the FCI Phoenix facility notes four detainees and five staff confirmed positive with thirty-five detainees having recovered from COVID-19.[4]  While the Court understands the Defendant's concern about the virus and his potential contraction of it, this, and many other district courts recognize that a fear of infection is not an extraordinary and compelling reason that warrants compassionate release.  *See United States v. Baye* 2020 WL 2857500, at \*10 (D. Nev. June 2, 2020) (citing *United States v. Mogavero* 2020 WL 1853754, at \*3 (D. Nev. Apr. 13, 2020)).  Thus, on this record, the Court finds that the two grounds upon which his motion is based do not arise to extraordinary and compelling reasons.  Nonetheless, it will also consider whether he presents a present danger as asserted by the Government.

### c.  The 3553(a) Factors

Although the Court finds that the Defendant does not meet the requisite extraordinary and compelling reasons based on his health, it will nonetheless consider the 3553(a) factors.  The Government contends, and the Defendant denies, that he poses a continuing danger.  The Defendant's argument is that he has been incarcerated for 17 years and the bank robbery that he committed in 2003, was committed while he was unarmed. (Doc. 123 at 11).  The Government points out, however, that at the time he was sentenced, he was designated as a career offender, having committed multiple bank robberies beginning at age 16.  (Doc. 122 at 1–2).  He has amassed three federal convictions for

---

[4] *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Nov. 12, 2020).

1

2

3

4

bank robbery for which he received sentences of seven years in 1988, seventy-three months for a 1997 bank robbery and two-hundred-forty months for the 2003 bank robbery. (*Id.*) At least twice, the Defendant committed bank robbery while he was on parole, pre-trial or supervised release. (*Id.*)

5

6

7

8

9

10

11

12

The Defendant argues that he was addicted to cocaine at the time he committed the offenses, and that while in prison, he has completed drug classes and a rehabilitation program. (Doc. 123 at 11). Further, he mentions that the only prison infraction incurred is a fifteen-day suspension of telephone use for "phone abuse." (*Id.* at 13). He also notes that he has paid restitution, that his father died leaving him "with a comfortable financial situation" and that he would reside in his mother's home. (*Id.*) The Defendant states that his sister supports his release and his mother has been placed in a care facility in Nevada, thus, it is presumed that he would be living in her residence, alone.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Upon his release, the Defendant will be in a better position than those similarly situated. However, rehabilitation and community immersion outside of federal custody is trying, even under the best of circumstances. On this record, it is difficult to determine whether the drug classes and rehabilitation program that he completed suffice to meet the Defendant's burden to show he is not a danger to the community, or himself. The nature and circumstances of the crime he committed are concerning. First, bank robbery is considered a "crime of violence" pursuant to 18 U.S.C. § 16. It is punishable by a maximum statutory term of 20 years in prison. 18 U.S.C. § 2113(a). Here, the Defendant committed multiple bank robberies, at least ten, according to the Government. (Doc. 122 at 2). It is noteworthy that at least three of his past bank robberies were committed while he was under court supervision. In addition, he continued committing the same offense after he had already sustained lengthy prison terms for the same acts. Moreover, at the time of sentencing, pursuant to the sentencing guidelines, the Defendant qualified as a career offender as he was in a criminal history category six. Thus, these factors weigh heavily against the Defendant's early release. In sum, the Court's analysis of the 3553(a) factors also militate against his compassionate release. Accordingly,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS ORDERED** denying Defendant's Motion for Compassionate Release (Doc. 120).

Dated this 13th day of November, 2020.

Honorable Diane J. Humetewa
United States District Judge